1   **WO**

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   United States of America,                    )
                                                  )
10          Plaintiff,                            )     No.  CV 23-108-TUC-CKJ
                                                  )          CR 18-549-TUC-CKJ
11   vs.                                          )
                                                  )          ORDER
12   Rey David Moreno-Vasquez,                    )
                                                  )
13          Defendant/Movant.                     )
    _____        )

14

15          Pending before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside

16   or Correct Sentence by a Person in Federal Custody ("Motion") (CV 23-108, Doc. 1; CR 18-

17   549, Doc. 250)[1] filed by Movant Rey David Moreno-Vasquez ("Moreno-Vasquez").

18

19   I.  *Factual and Procedural Background*

20          On March 15, 2017, an Arkansas State trooper stopped Dennis Marsteller ("D.

21   Marsteller") and Vennie Marsteller for a traffic violation in rural Arkansas.  During a

22   consensual search of their pickup, the trooper found approximately 52 bottles of iced tea and

23   ginger ale and, upon further examination, the trooper discovered that the bottles contained

24   methamphetamine suspended in a solution.  The Marstellers subsequently informed law

25   enforcement that Moreno-Vasquez had provided them with the bottles of liquid

26   methamphetamine, they were transporting them across the country to Atlanta, and they had

27   _____

28          [1]Unless otherwise stated, references to the docket are to the CV 23-108 docket.

transported similar loads on approximately four other occasions at the direction of Moreno-Vasquez.  The Marstellers provided details as to the history with Moreno-Vasquez and the prior transportations including, *inter alia*, occasions when Moreno-Vasquez provided the liquid to the Marstellers, Moreno-Vasquez provided instructions regarding accommodations, payments for the transportations, transference of funds, contact persons, and discussions with Moreno-Vasquez regarding travel to Mexico to meet the people responsible for making the liquid methamphetamine and creating a drop off point halfway between Arizona and Atlanta.  The liquid contained in each of the bottles tested positive for methamphetamine.  In total, approximately 23.21 gallons of methamphetamine weighing approximately 88.75 kilograms were recovered from the vehicle.

In June of 2017, Moreno-Vasquez rented an RV from an RV dealer in Tucson, drove the RV to Georgia, then returned it.  In August of 2017, Moreno-Vasquez was observed purchasing a new pre-paid cell phone and was present when heavy cardboard boxes were transferred from Moreno-Vasquez's vehicle to a Mexican-plated vehicle driven by Benito Barrios-Maldonado ("Barrios-Maldonado").[2]  Although quarterly wage reports of Moreno-Vasquez indicated he earned $7,000 per quarter in 2015 and the second quarter in 2017, Moreno-Vasquez was never seen or observed working in any type of capacity.

An associate of Moreno-Vasquez's was observed receiving several large cardboard boxes from an individual.  The boxes contained bottles of what appeared to be juices, but which the delivering individual stated contained liquid methamphetamine that was to be transported to Atlanta, GA.

A confidential source informed agents Moreno-Vasquez had stated (1) the liquid methamphetamine originates in Jalisco, Mexico, and is then shipped to Sonora, Mexico, and crossed into Douglas, Arizona, (2) Moreno-Vasquez and his brother were facing a combined

---

[2]Barrios-Maldonado subsequently provided cash for an RV rental; several large cardboard boxes containing bottles of what appeared to be juices were loaded into the RV. The person providing the boxes/bottles stated they contained liquid methamphetamine that were to be transported to Georgia.

1   debt of $1,000,000, and (3) an attorney is kept on retainer for the Moreno-Vasquez family
2   to consult with for advice on how to safely proceed with their drug trafficking activities.

3       Moreno-Vasquez was surveilled driving in tandem with an RV that was found to have
4   79 bottles like those in the Marstellers' pickup, sealed with brand labels for juice, ice tea, and
5   ginger ale.

6       Other individuals also transported liquid methamphetamine in RVs. Moreno-Vasquez
7   was observed at the location of at least one such RV.

8       On April 4, 2018, a federal grand jury indicted Moreno-Vasquez and a co-defendant
9   for the offenses of Conspiracy to Possess with Intent to Distribute Methamphetamine (Count
10  1), Possession with Intent to Distribute Methamphetamine (Counts 2 and 3), Money
11  Laundering (Counts 4, 5, and 6), and Conspiracy to Commit Money Laundering (Count 7).
12  (CR-18-549, Doc. 3.)  The indictment also included a forfeiture allegation for Moreno-
13  Vasquez's real property, his 2007 Chevrolet Tahoe, and a sum of money equal to the amount
14  of proceeds obtained as a result of the offenses.

15      Moreno-Vasquez filed four Motions to Suppress.  The Motion to Suppress historical
16  cell-site location data was granted; the other three Motions to Suppress were denied.

17      During a November 20, 2020, hearing, Moreno-Vasquez was advised of the possible
18  consequences should he proceed to jury trial and the possible consequences of pleading
19  guilty.  Moreno-Vasquez's request to have copies of all discovery and his dissatisfaction with
20  counsel (attorneys Stephen Ralls ("Ralls") and Grant Wille) were also discussed. On May 21,
21  2021, a Motion to Withdraw as Attorney of Record was granted; ultimately Erendira
22  Castillo-Reina ("Castillo-Reina") on July 13, 2021, was appointed to represent Moren-
23  Vasquez.[3]

24      On April 27, 2022, Moreno-Vasquez entered a plea of guilty to an Information
25  charging one count of Conspiracy to Possess with Intent to Distribute Methamphetamine.
26

27      [3]In the interim, FPD Jamiel Allen was appointed and withdrew due to a conflict of
28  interest; Rodolfo Valenzuela was also appointed and withdrawn.

The plea agreement included stipulations in which the government and Moreno-Vasquez agreed an appropriate sentence would be between 48 and 84 months of imprisonment and Moreno-Vasquez did not qualify for a mitigated role adjustment, but did not agree as to whether Moreno-Vasquez was an average participant or whether Moreno-Vasquez qualified for an aggravated role adjustment.  Further, the plea agreement provided it should not be construed to protect Moreno-Vasquez from "civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Further, this agreement does not preclude the United States from instituting any civil proceedings as may be appropriate now or in the future." Plea Agreement, (CR 18-549, Doc. 223, pp. 3-4). Additionally, the plea agreement stated:

> Provided the defendant receives a sentence in accordance with this fast-track plea agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentencing-including the manner in which the sentence is determined, the determination whether defendant qualifies for "safety valve" (U.S.S.G. § 5Cl.2 and 18 U.S.C. § 3553(f)), and any sentencing guideline determinations. The sentence is in accordance with this agreement if the sentence imposed does not exceed **84** months imprisonment. The defendant further waives: ( 1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; ( 4) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under Title 18, United States Code,  Section 3582( c) ( except for the right to file a compassionate release motion under 18 U .S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his/her conviction or sentence in this case. If the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section 11.B of Ariz. Ethics Op. 15-01 (2015)).

Plea Agreement, (CR 18-549, Doc. 223, pp. 5-6).

1    The plea agreement also provided Moreno-Vasquez's guilty plea was "not the result
2    of force, threats, assurance or promises other than the promises contained" in the agreement,
3    Moreno-Vasquez agreed the plea agreement contained "all the terms and conditions of my
4    [Moreno-Vasquez's] plea and that promises made by anyone (including [Moreno-Vasquez's
5    attorney] that [were] not contained within [the] plea agreement [were] without force and
6    effect and [were] null and void." Plea Agreement, (CR 18-549, Doc. 223, p. 4).

7    During the change of plea proceeding, Moreno-Vasquez affirmed no one had
8    promised anything not included in the plea agreement and no one forced or threatened him
9    to plead guilty. Additionally, Moreno-Vasquez agreed he was giving up any right he had to
10   a 2007 Chevrolet Tahoe. Further, Moreno-Vasquez affirmed he entered "into an agreement
11   with some other people that [he was] going to participate in the possession and distribution
12   of liquid methamphetamine[,]" the other persons included D. Marsteller and V. Marsteller,
13   a state trooper in Arkansas stopped the Marstellers while they were in possession of 52
14   bottles of liquid methamphetamine, Moreno-Vasquez was "part of helping them
15   communicate with other coconspirators to help this, the transportation of [the]
16   methamphetamine [to] go successfully[,]"and that Moreno-Vasquez was "legally responsible
17   for at least 10.96 kilograms of methamphetamine that was seized by law enforcement during
18   [the] conspiracy[.]" Change of Plea Transcript (CR 18-549, Doc. 253, pp. 10-12).

19   On August 1, 2022, this Court sentenced Moreno-Vasquez to a term of seventy (70)
20   months in the custody of the Bureau of Prisons, to be followed by a three (3) year term of
21   supervised release.

22   On March 3, 2023, Moreno-Vasquez filed the pending Motion (CV 23-108, Doc. 1;
23   CR 18-549, Doc. 250). A response has been filed (Doc. 6).

24

25   II. *28 U.S.C. § 2255*

26   Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may move a sentencing court to
27   vacate, set aside, or correct his or her sentence on the grounds that (i) the sentence violates

28

the U.S. Constitution or other federal law; (ii) the court lacked jurisdiction to impose the sentence; (iii) the sentence exceeds the maximum authorized by law; or (iv) the sentence is otherwise subject to collateral attack.  Here, Moreno-Vasquez asserts attorneys Ralls and Castillo-Reina were ineffective for (1) failing to investigate, (2) failing to file motions, (3) bribing, coercing, and extorting Moreno-Vasquez into pleading guilty (voluntariness of plea) and (4) suggesting a co-defendant as an attorney and conspiring to assist the government. Moreno-Vasquez also asserts an actual innocence claim.

Where a claim involves alleged occurrences outside the record, a hearing is not required if the allegations "viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir.1985), *quoting United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir.1984); *Smith v. United States*, 884 F.2d 582 (9th Cir. 1989)  (hearing not required for 2255 claims of ineffective assistance of counsel and prosecutorial misconduct where the motion, files and records of the case conclusively show a prisoner is entitled to no relief).  Where the allegations of a movant contradict statements made in court, credibility must be assessed.  *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). "'Solemn declarations in open court carry a strong presumption of verity[.]'"  *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir.), *cert. denied*, 484 U.S. 832 (1987), *citations omitted*; *see also Creech v. Richardson*, 59 F.4th 372, 393 (9th Cir.), *cert. denied*, 144 S. Ct. 291 (2023), *citations omitted*.  An evidentiary hearing is not required where the issue of credibility may be "conclusively decided on the basis of documentary testimony and evidence in the record."  *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.1988).[4]  Also, courts may expand the record with other documentary evidence, use their own notes and recollections, and use common sense.  *Shah*, 878 F.2d at 1159; *see also United States v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988).  The Court, therefore, will properly consider the complete record

---

[4]However, a hearing may be required "in spite of 'the barrier of the plea or sentencing procedure record [which], although imposing, is not invariably insurmountable.'"  *Shah*, 878 F.2d at 1158, *quoting Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

1   of what occurred in the criminal case.  Because the files and records conclusively show

2   Moreno-Vasquez is not entitled to relief, the Court finds an evidentiary hearing is not

3   required.

4

5   III.  *Waiver of Right to File 28 U.S.C. § 2255 Petition*

6           A waiver generally will be enforced if the agreement, by its terms, expressly waives

7   the right and the waiver is knowingly and voluntarily made.  *Davies v. Benov*, 856 F.3d 1243,

8   1246 (9th Cir. 2017) (A waiver is enforceable if "the language of the waiver encompasses

9   [the defendant's] right to appeal on the grounds raised" and "the waiver is knowingly and

10  voluntarily made."), *internal quotation marks omitted*; *United States v. Nunez*, 223 F.3d 956,

11  958 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States

12  v. Vences*, 169 F.3d 611 (9th Cir. 1999)(sentence was not illegal where it was authorized by

13  the judgment of conviction and was not in excess of the statutory penalty).  In this case, the

14  plea agreement provided that if Moreno-Vasquez received a sentence in accordance with the

15  plea agreement, Moreno-Vasquez waived any right to appeal the Court's entry of judgment

16  or sentence and waived any right to collaterally attack under 28 U.S.C. § 2255 or any other

17  collateral attack to his conviction and sentence.  Moreno-Vasquez's sentence is consistent

18  with the plea agreement.

19          However, the plea agreement further provides the waiver is not to be construed to bar

20  claims of ineffective assistance of counsel.  *See*, *United States v. Rodriguez*, 49 F.4th 1205,

21  1212 (9th Cir. 2022) (where defendant alleges ineffective assistance of counsel while

22  entering plea agreement, the claim may attack the knowing and voluntary nature of the plea

23  agreement).  The Court finds Moreno-Vasquez has not waived his claims of ineffective

24  assistance of counsel and the Court will consider these claims.

25  . . . . .

26  . . . . .

27

28

1    IV.  *Ineffective Assistance of Counsel*

2         Ineffective assistance of counsel constitutes a violation of the Sixth Amendment right

3    to counsel, and thus, if established, is grounds for relief under § 2255.  *See e.g. United States*

4    *v. Houtchens*, 926 F.2d 823, 828 (9th Cir. 1991) (section 2255 motion is the customary

5    procedure for challenging the effectiveness of counsel under the Sixth Amendment).  Further,

6    a "'decision to enter into a plea agreement cannot be knowing and voluntary when the plea

7    agreement itself is the result of advice outside the range of competence[.]'"  *United States v.*

8    *Ruiz*, 241 F.3d 1157, 1165 (9th Cir. 2001), *reversed on other grounds, quoting DeRoo v.*

9    *United States*, 223 F.3d 919, 923-24 (8th Cir. 2000).

10        To prevail on a claim of ineffective assistance of counsel, Moreno-Vasquez must

11   satisfy a two prong test, demonstrating: (1) deficient performance, such that counsel's actions

12   were outside the wide range of professionally competent assistance, and (2) Moreno-Vasquez

13   was prejudiced by reason of counsel's actions.  *Strickland v. Washington*, 466 U.S. 668, 686-

14   90 (1984).  Additionally, a defendant's Sixth Amendment right to counsel "extends to the

15   plea bargaining process."  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  "A claim of

16   ineffective assistance used to attack the validity of a guilty plea may be sustained where the

17   petitioner establishes that the ineffective performance 'affected the outcome of the plea

18   process . . . [such] that absent the erroneous advice, [he] would have insisted on going to

19   trial.'"  *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996), *quoting Hill v.*

20   *Lockhart*, 474 U.S. 52, 58 (1985).

21        Lastly, a court "need not determine whether counsel's performance was deficient

22   before examining the prejudice suffered by the defendant as a result of the alleged

23   deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

24   sufficient prejudice, which we expect will often be so, that course should be followed."

25   *Strickland*, 466 U.S. at 697.  Since a petitioner must affirmatively prove prejudice, any

26   deficiency that does not result in prejudice must necessarily fail.

27

28

A. *Ineffective Assistance of Ralls*

Moreno-Vasquez asserts attorney Ralls provided ineffective assistance. However, as attorney Ralls was withdrawn as Moreno-Vasquez's attorney about eleven months prior to Moreno-Vasquez's entry of a plea of guilty and attorney Castillo-Reina represented Moreno-Vasquez for almost ten months before Moreno-Vasquez's guilty plea, it is difficult to see how Moreno-Vasquez can show he has been prejudiced by any alleged deficiency of Ralls. Indeed, a court need not determine whether an attorney's performance was deficient before examining the prejudice suffered by a petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since a petitioner must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. As Castillo-Reina had more than sufficient time to remedy any alleged actions or deficiencies of Ralls, the Court finds Moreno-Vasquez has not shown he has been prejudiced by any alleged deficiency of Ralls. For example, where Ralls allegedly suggested a co-defendant as an attorney and conspired to assist the government, but Moreno-Vasquez did not enter a plea of guilty in light of this alleged deficient conduct, the conduct of subsequent counsel Castillo-Reina cured any alleged deficiencies.

The Court finds Moreno-Vasquez has not shown he was prejudiced by the alleged ineffectiveness of Ralls; therefore, the Court finds Moreno-Vasquez has not shown ineffective assistance of counsel claims as to Ralls.


B. *Ineffective Assistance of Counsel - Reasonable Investigation*

Moreno-Vasquez asserts counsel was ineffective by failing to conduct a reasonable investigation enabling her to make informed decisions how best to represent him. Moreno-Vasquez asserts counsel should have followed-up with an agent who allegedly stated during a recorded interview that Moreno-Vasquez was not the guy they were looking for. The government asserts, however, that agents told Moreno-Vasquez, *inter alia*, they were seeking information about Moreno-Vasquez's co-conspirator and they understood Moreno-Vasquez

1  was not the main guy.  Response (Doc. 6, p. 10), *citing* Government Disclosure, Bates

2  6240-6280.  The response fails to provide supporting documentation (e.g., copy of statement,

3  affidavit of agent).  Further, a review of the documents submitted in the criminal case

4  indicates no such supporting documentation is within the criminal record.

5  In such circumstances, the Court cannot say the Motion, files and records of the case

6  conclusively show Moreno-Vasquez is entitled to no relief as to this claim.  *Schaflander*, 743

7  F.2d at 717.  However, the Court also considers whether prejudice has been shown.

8  In this case, the statements of others involved provided evidence that Moreno-

9  Vasquez provided bottles of liquid methamphetamine, instructions regarding

10  accommodations, payments for the transportations, transference of funds, and contact

11  persons.  The statements of others also discussed prior transportations at the direction of

12  Moreno-Vasquez.  Further, surveillance provided evidence of Moreno-Vasquez's

13  involvement with the transportation of the liquid methamphetamine to Georgia.  Had an

14  agent stated Moreno-Vasquez was not the guy they were looking for, such statement would

15  not dispute the evidence against Moreno-Vasquez.  Rather, the possible involvement or guilt

16  of others does not diminish the guilt of Moreno-Vasquez.  In such circumstances, the Court

17  finds it has not been shown counsel was prejudiced by the alleged deficiency of counsel.

18  Moreover, neither Moreno-Vasquez nor the government have provided an affidavit

19  of counsel as to whether any investigation into this alleged statement was conducted.  Such

20  an investigation would likely have resulted in a determination that further pursuit of this

21  tactic would be fruitless in light of the other evidence against Moreno-Vasquez.  Again, the

22  Court finds it has not been shown Moreno-Vasquez was prejudiced by this alleged

23  deficiency.

24  Moreno-Vasquez also asserts counsel was ineffective for failing to investigate the

25  testing of the liquid methamphetamine; Moreno-Vasquez asserts the liquid was actually horse

26  vitamins.  However, even if the liquid include horse vitamins, the testing shows the liquid

27  also contained methamphetamine.  Moreover, the sentencing transcript indicates the provable

28

1   quantity of methamphetamine was raised by counsel and resulted in the amount agreed to by

2   Moreno-Vasquez being significantly reduced from the amount originally alleged by the

3   government:

4           MS. HEPFORD:  Normally, the government doesn't get into what it may or may not
            consider proof issues should the case have gone to trial. I will share with the Court
5           that during the course of litigation with prior counsel, there were some issues raised
            about the provable quantity of meth in the case based on a difference in testing
6           between a state lab and a DEA lab.  That is why -- that is one of the reasons why the
            government indicates that the defendant is responsible for at least 10.96 kilograms as
7           opposed to the amount alleged in the Indictment.  We had some concerns about
            proving beyond that, so that was one --
8
            THE COURT:  So what did the Indictment allege?  More than that?
9
            MS. HEPFORD:  Yes. I believe it was a total of 234 kilograms.
10
            THE COURT:  Oh, okay.  And we don't know if it was pure meth or not because that
11          would raise the base offense level, right, and the purity?

12          MS. HEPFORD:  Correct.  The sampling, the sampling method for taking samples to
            test from these various containers that appeared to contain liquid meth, that became
13          somewhat of an issue in litigation with prior counsel.

14  Sentencing Transcript (CR 18-549, Doc. 254, p. 7).  Additionally, Moreno-Vasquez stated

15  during the change of plea hearing that he was responsible for at least 10.96 kg of

16  methamphetamine during the conspiracy.

17          The government states the laboratory testing asserts the liquid was methamphetamine,

18  but acknowledges purity tests were not conducted on all samples.  The  purity analysis of

19  samples from the August 2017 seizure showed a purity of 53% +/- 5%.  However, the

20  absence of purity analysis of all of the methamphetamine does not negate the presence of

21  methamphetamine.  While a higher purity may result in a greater sentencing range, *see e.g.*

22  *United States v. Trujillo*, No. 1:16-CR-00227-BLW, 2017 WL 2884527, at *3 (D. Idaho July

23  6, 2017) ("The Sentencing Commission considers drug purity relevant in part because

24  "possession of unusually pure narcotics may indicate a prominent role in the criminal

25  enterprise and proximity to the source of the drugs."); *United States v. Kort*, 440 F. App'x

26  678, 685 (10th Cir. 2011) ("it is evident the Sentencing Commission recommends a higher

27  offense level for "Ice" methamphetamine"), the guideline calculation in this case did not

28

1    include exposure of Moreno-Vasquez to a higher offense level based on the purity of the

2    methamphetamine.  *See* 21 U.S.C. § 841.

3          The Court finds Moreno-Vasquez has not been prejudiced by any alleged failure to

4    adequately investigate the liquid substance.

5

6    C.  *Ineffective Assistance of Counsel - Failure to File Motions*

7          Moreno-Vasquez also asserts counsel was ineffective for failing to file a motion for

8    a bond hearing.  However, the only reasons stated in his Motion in support of release are that

9    it would have helped him to prepare his defense and would afford him an opportunity to see

10   his ailing mother.  This information was either known to Moreno-Vasquez or would not have

11   a material bearing on "the issue whether there are conditions of release that [would]

12   reasonably assure the appearance of [Moreno-Vasquez] as required and the safety of any

13   other person and the community." 18 U.S.C. § 3142(f).  Counsel was not deficient for failing

14   to move for a new detention hearing and Moreno-Vasquez has not shown he was prejudiced

15   by the alleged deficiency.

16         Additionally, freestanding constitutional claims are not available to petitioners who

17   plead guilty because when "a criminal defendant has solemnly admitted in open court that

18   he is in fact guilty of the offense with which he is charged, he may not thereafter raise

19   independent claims relating to the deprivation of constitutional rights that occurred prior to

20   the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). However,

21   claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review

22   when the action, or inaction, of counsel prevents a petitioner from making an informed

23   decision whether to plead.  *Id*. at 267–69; *United States v. Broce*, 488 U.S. 563, 574 (1989)

24   (suggesting that a "failure by counsel to provide advice [on a double jeopardy defense] may

25   form the basis of a claim of ineffective assistance of counsel" and could "serve as the

26   predicate for setting aside a valid plea.").  The *Tollett* Court held a defendant who had

27   pleaded guilty could not obtain habeas relief "by proving only that" blacks were

28

1  unconstitutionally excluded from his grand jury. 411 U.S. at 260. Instead of dismissing the

2  claim, the Supreme Court remanded to allow the lower court to determine whether counsel's

3  failure to investigate or object to the grand jury composition constituted ineffective assistance

4  of counsel. *Id*. at 268–70.

5       In this case, the failure of counsel to file a motion requesting a detention hearing did

6  not prevent Moreno-Vasquez from making an informed decision whether to plead guilty.

7  Therefore, Moreno-Vasquez's assertion that counsel should have filed a motion for a

8  detention hearing is precluded by his guilty plea.

9       Moreno-Vasquez also argues counsel was ineffective for failing to file a motion to

10  suppress.  To the extent the government also argues this claim is precluded by Moreno-

11  Vasquez's guilty plea, the Court disagrees.  The Supreme Court, the Ninth Circuit, and other

12  courts have analyzed on the merits a habeas petitioner's allegation counsel rendered pre-plea

13  ineffective assistance by failing to file a motion to suppress. *See e.g. Premo*, 562 U.S. at

14  123–32; *Weaver v. Palmateer*, 455 F.3d 958, 972 (9th Cir. 2006); *Langford v. Day*, 110 F.3d

15  1380, 1387 (9th Cir. 1996); *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–50

16  (11th Cir. 2015); *Gilbert v. Merchant*, 488 F.3d 780, 790–95 (7th Cir. 2007); *Ward v. Dretke*,

17  420 F.3d 479, 487–90 (5th Cir. 2005); *Hale v. Lockhart*, 903 F.2d 545, 550 (8th Cir. 1990);

18  *Adcox v. O'Brien*, 899 F.2d 735, 737 (8th Cir. 1990).  Had a motion to suppress as to

19  statements/*Miranda* been successful, it may have affected Moreno-Vasquez's decision

20  whether to plead guilty.  Moreno-Vasquez's ineffective assistance of counsel claim as to the

21  motion to suppress is allowed under *Tollett*. *Mahrt v. Beard*, 849 F.3d 1164, 1170–71 (9th

22  Cir. 2017).

23       However, Moreno-Vasquez does not point to any statements that should have been

24  suppressed.   Indeed, the government asserts Moreno-Vasquez was not asked any

25  interrogatory questions prior to being advised of his Miranda rights and, once he was so

26  advised, Moreno-Vasquez invoked.  In other words, there were no statements subject to

27  suppression.  In such circumstances, the Court finds it has not been shown counsel's

28

1  performance was deficient nor was Moreno-Vasquez prejudiced by the alleged deficiency.

2  *Petrocelli v. Baker*, 869 F.3d 710, 723 (9th Cir. 2017); *Premo v. Moore*, 562 U.S. 115, 124

3  (2011).

4

5  D.  *Ineffective Assistance of Counsel – Voluntariness of Guilty Plea*

6       Moreno-Vasquez asserts counsel was ineffective because Castillo-Reina bribed,

7  coerced, and extorted him into pleading guilty.  He alleges counsel promised would get a

8  time-served sentence and be out of custody in time to see his ailing mother.  Moreno-

9  Vasquez also alleges counsel promised that Moreno-Vasquez would get half of the value of

10 the Tahoe.  However, the plea agreement and affirmations made by Moreno-Vasquez in

11 solemn declarations in open court belie Moreno-Vasquez's claims.  *Rubalcaba*, 811 F.2d at

12 494.  The plea agreement provided for a stipulated sentencing range, Moreno-Vasquez

13 agreed to the forfeiture of the Tahoe, and Moreno-Vasquez stated his guilty plea was not the

14 result of promises or threat.  The documentary testimony and evidence in the record

15 conclusively demonstrate Moreno-Vasquez is not entitled to relief.  *Watts*, 841 F.2d at 277.

16      Further, Moreno-Vasquez has not shown he was prejudiced by this alleged deficiency.

17 The terms of the plea agreement and Moreno-Vasquez's affirmations make clear he was

18 aware of the terms of the plea agreement.  Additionally, even if this matter proceeded to trial,

19 Moreno-Vasquez's defenses do not dispute the evidence against him in the record and briefly

20 summarized in this Order.  In other words, Moreno-Vasquez has not shorn the result would

21 have been different.

22

23 V.  *Claim of Actual Innocence*

24      Moreno-Vasquez asserts he is actually innocent of the offense for which he pleaded

25 guilty.  Assuming a freestanding actual innocence claim is viable in a habeas petition,

26 *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997), *en banc*, the Court considers whether

27 Moreno-Vasquez has gone "beyond demonstrating doubt about his guilt, and must

28

1    affirmatively prove that he is probably innocent.  *Id*, *citing Herrera v. Caoolins*, 506 U.S.

2    390, 442-44) (Blackmun, J., dissenting).

3         "Actual innocence" is defined as "factual innocence" and not mere legal insufficiency.

4    *Bousley v. United States*, 523 U.S. 614, 615 (1998). "Accordingly, the Government is not

5    limited to the existing record but may present any admissible evidence of petitioner's guilt,"

6    and Moreno-Vasquez's "actual innocence showing must also extend to charges that the

7    Government has forgone in the course of plea bargaining."  *Id*.

8         In support of his actual innocence claim, Moreno-Vasquez asserts the liquid the

9    Martstellers were transporting did not contain methamphetamine because the government

10   was unable to test it.  However, the liquids seized on March 15 and August 24, 2017, were

11   tested and determined to be methamphetamine.  Lack of purity testing does not alter this fact.

12        Moreno-Vasquez also asserts the only testimony against him was evidence from a

13   desperate informant who would accuse an innocent man just to get less time.  However,

14   information provided by electronic and physical surveillance, phone records, and witness

15   statements corroborates the evidence from the informant and provides evidence of Moreno-

16   Vasquez's role in the conspiracy.

17        Further, Moreno-Vasquez asserts the months of surveillance of him did not show him

18   committing any illegal acts.  However, the surveillance included observing Moreno-Vasquez

19   renting an RV, driving the RV in New Mexico, and returning the RV with 3664 miles driven,

20   slightly more than a round trip from Tucson to Atlanta.  *See e.g.* Tripmath (1732 one way

21   trip),  https://www.travelmath.com/distance/from/Atlanta,+GA/to/Tucson,+AZ   e.g. (last

22   accessed Feb. 7, 2024).  Further, he was observed when heavy cardboard boxes from his

23   vehicle were transferred to a Mexican-plated vehicle.  Additionally, Moreno-Vasquez was

24   observed driving in tandem with an RV; this RV was found to have bottles like those in the

25   Marstellers' pickup, sealed with brand labels for juice, ice tea, and ginger ale.  These

26   observations not only corroborated information by the Marstellars, but also constitute

27   circumstantial evidence of the charged offense.

28

1    Significantly, the plea agreement and affirmations made by Moreno-Vasquez in

2  solemn declarations in open court contradict Moreno-Vasquez's habeas claims. *Rubalcaba*,

3  811 F.2d at 494.  Rather, Moreno-Vasquez's guilty plea undermines his claim because his

4  affirmed statements during the change of plea hearing "carry a strong presumption of truth."

5  *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012).  Indeed, Moreno-Vasquez affirmed he

6  entered into an agreement with others that Moreno-Vasquez was going to participate in the

7  possession and distribution of liquid methamphetamine, he helped others communicate to

8  facilitate the transportation of methamphetamine, and he was legally responsible for at least

9  10.96 kilograms of methamphetamine that was seized by law enforcement during the

10  conspiracy.  The Court finds Moreno-Vasquez has not shown he is actually/factually

11  innocent.

12

13  **VI.  *Conclusion***

14    The Court has concluded Moreno-Vasquez has not waived his right to present his

15  claims of ineffective assistance of counsel claims.  However, it has not been shown that

16  either Ralls or Castillo-Rena provided ineffective assistance of counsel.  Counsel's purported

17  ineffective "'performance [did not affect] the outcome of the plea process . . . [such] that

18  absent the erroneous advice, [Moreno-Vasquez] would have insisted on going to trial.'"

19  *Baramdyka*, 95 F.3d at 844, *citation omitted*.  Moreno-Vasquez has not shown ineffective

20  assistance of counsel warrants habeas relief.

21

22  **VII.  *Certificate of Appealability ("COA")***

23    Rule 11(a), Rules Governing Section 2255 Proceedings, requires that in habeas cases

24  the "district court must issue or deny a certificate of appealability when it enters a final order

25  adverse to the applicant." Such certificates are required in cases concerning detention arising

26  "out of process issued by a State court[,]" or in a proceeding under 28 U.S.C. § 2255

27  attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Motion

28

1  is brought pursuant to 28 U.S.C. § 2255.  This Court must determine, therefore, if a COA
2  shall issue.

3      The standard for issuing a COA is whether the applicant has "made a substantial
4  showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district
5  court has rejected the constitutional claims on the merits, the showing required to satisfy §
6  2253(c) is straightforward:  The movant must demonstrate that reasonable jurists would find
7  the district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*
8  *McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on
9  procedural grounds without reaching the prisoner's underlying constitutional claim, a COA
10  should issue when the prisoner shows, at least, that jurists of reason would find it debatable
11  whether the petition states a valid claim of the denial of a constitutional right and that jurists
12  of reason would find it debatable whether the district court was correct in its procedural
13  ruling."  *Id*.  In the certificate, the Court must indicate which specific issues satisfy the
14  showing.  *See* 28 U.S.C. § 2253(c)(3).

15      The Court finds that jurists of reason would not find it debatable whether the Motion
16  stated a valid claim of the denial of a constitutional right.  Further, the Court finds that jurists
17  of reason would not find it debatable whether the district court was correct in its procedural
18  rulings.  A COA shall not issue as to Moreno-Vasquez's claims.

19      Any further request for a COA must be addressed to the Court of Appeals.  *See* Fed.
20  R.App. P. 22(b); Ninth Circuit R. 22-1.

21

22      Accordingly, IT IS ORDERED:

23      1.  The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence
24  by a Person in Federal Custody (CV 23-108, Doc. 1; CR 18-549, Doc. 250) is DENIED.

25      2.  Cause No. CV 23-108 is DISMISSED.

26      3.  The Clerk of the Court shall enter judgment and shall then close its file in
27  Cause No. CV 23-108.

28

4.    A Certificate of Appealability shall not issue in this case.

DATED this 20th day of February, 2024.


_____
Cindy K. Jorgenson
United States District Judge